IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES MADISON, #166443, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-628-GMB |
| | ) | [WO] |
| | ) | |
| MRS. PAYNE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

## **I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Charles Madison, a state inmate, in which he alleges the defendants violated his constitutional rights by failing to provide him medical treatment for "bleeding ulcers" in March 2016 at the Easterling Correctional Facility. Doc. 1 at 3. Madison also appears to challenge the constitutionality of the assessment and collection of a $4 medical co-payment undertaken by the Alabama Department of Corrections for medical treatment provided to him on May 25, 2016. Docs. 1 at 3 & 17 at 4. Madison names as defendants Nurse Mona Payne, Nurse Kay Wilson, Dr. Jean Darbouze, all medical personnel employed at Easterling during the time period relevant to the complaint, and Corizon Health, the contract medical provider at the time of his treatment. Madison seeks a declaratory judgment and injunctive relief in the form of proper medical care. Doc. 1 at 4.

The defendants filed a special report and relevant evidentiary materials in support of their report, including affidavits and certified copies of Madison's medical records,

addressing the deliberate indifference claim presented against them. In these documents, the defendants assert that they provided medical treatment to Madison in accordance with their professional judgment and deny any violation of Madison's constitutional rights.

After reviewing the defendants' special report and supporting exhibits, the court issued an order directing Madison to file a response to the arguments set forth by the defendants in their report and advising him that this response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 13 at 2. The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 13 at 3. Madison filed an unsworn response to this order on August 26, 2016 (Doc. 14), and submitted exhibits in support of his response on September 9, 2016. Doc. 17 at 4–6.

Pursuant to the directives of the aforementioned order, the court now treats the defendants' special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that the moving party has the initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64

3

F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court also will consider "specific facts" pleaded in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Madison's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Madison has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

**III. DISCUSSION**

**A.  Deliberate Indifference**

Madison alleges that the defendants denied him "proper treatment for [his] bleeding ulcers here at Easterling . . . [on or about] March 27, 2016." Doc. 1 at 3. In their response, the defendants deny acting with deliberate indifference to Madison's medical needs.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Medical personnel may not subject an inmate

5

to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Under settled law, neither medical malpractice or negligence equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless.

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) (citations omitted).

In order to establish "deliberate indifference to [a] serious medical need . . . Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively serious medical need[] . . . and second, that the response made by [the defendant] to that need was poor enough to constitute an unnecessary and wanton infliction

of pain, and not merely accidental inadequacy, negligen[ce] in diagnos[is] or treat[ment], or even [m]edical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted). To proceed on a claim challenging the constitutionality of medical care "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986); *Estelle*, 429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated"); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate's complaint because "misdiagnosis and inadequate treatment involve no more than medical negligence").

Additionally, "to show the required subjective intent . . . a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things: aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted) (alterations in original). Thus, deliberate indifference occurs only when a defendant

7

"knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant a finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery Cnty. Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted). Moreover, "[a]

8

difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference).

Dr. Darbouze submitted an affidavit (Doc. 12-1 at 2–5), and relevant medical records in response to the complaint filed by Madison. *See* Doc. 12-1 at 8–85. The details of medical treatment provided to Madison as set forth by Dr. Darbouze in his affidavit are corroborated by the objective medical records contemporaneously compiled during the treatment process. Dr. Darbouze addresses the allegation of deliberate indifference, in relevant part, as follows:

> I have reviewed the medical chart of Alabama state inmate Charles Madison (AIS#: 166443) and I am personally aware of the medical care and treatment that Mr. Madison has received while incarcerated at the Easterling Correctional Facility. . . .
> I am aware that Mr. Madison alleges that he has bleeding ulcers and that his medical condition has not been treated adequately by both myself and other medical providers and nurses at the Easterling Correctional Facility. . . .
> Mr. Madison's complaint states that he has not received adequate and proper medical treatment for "bleeding ulcers" since March 27, 2016.
> On November 13, 2015, Mr. Madison underwent an Esophagogastroduodenoscopy (EGD). The EGD utilizes an endoscope which is a small camera on a tube. An EGD test involves passing an endoscope down the throat and along the length of the esophagus. The EGD examines the lining of the esophagus, stomach and duodenum. The EGD performed on Mr. Madison on November 13, 2015, was normal.
> On November 13, 2015, Mr. Madison also underwent a colonoscopy which was also normal.
> However, the EGD did show indications of gastritis. Gastritis describes a group of conditions of one thing in common: inflammation of the lining of the stomach.
> For his gastritis, Mr. Madison was prescribed Prilosec (omeprazole) which is a proton pump inhibitor that decreases the amount of acid produced in the stomach. Prilosec is used to treat symptoms of gastroesophageal reflux

9

disease (GERD) and other conditions caused by excess stomach acid. Omeprazole is also used to promote healing of erosive esophagitis (damage to the esophagus caused by stomach acid).

It is noted throughout Madison's [medical records] that Mr. Madison was non-compliant with his prescribed Prilosec.

On May 25, 2016, a series of blood lab work was performed on Mr. Madison. All the lab work performed on May 25, 2016 was completely normal.

Another series of blood lab work was performed on June 28, 2016. The lab work performed on June 28, 2016, was a repeat of the lab work performed on May 25, 2016. Everything was within normal limits except a slight increase in Mr. Madison's triglycerides.

All objective tests and lab work performed on Mr. Madison have been negative for bleeding ulcers. Mr. Madison does show indications of having gastritis and he has been prescribed appropriate medications for his condition.

Mr. Madison has been seen on numerous occasions by both myself and the nurses in the health care unit of the Easterling Correctional Facility.

At no time has Mr. Madison's necessary medical care been delayed or denied.

Each time Mr. Madison has been requested to be seen by a medical provider, he has been seen [and evaluated]. However, the medical records demonstrate that Mr. Madison is often a no show for sick call appointments and is also non-compliant with his prescribed medications.

Due to Mr. Madison's gastritis, he has suffered from nausea and vomiting which have caused some weight loss. As a result of the weight loss, Mr. Madison has been placed on a wellness diet beginning on July 8, 2016.

Mr. Madison is closely monitored at the health care unit at the Easterling Correctional.

I have personally been responsible for Mr. Madison's health care during his incarceration at the Easterling Correctional Facility.

Based on my personal knowledge of Mr. Madison's complaints, the results from the objective tests performed on Mr. Madison, the results of Mr. Madison's evaluations and objective reports, as well as my education, training, background and experience, it is my personal opinion that Mr. Madison has at all times received medical care within the standard of care of physicians practicing medicine in the state of Alabama.

Doc. 12-1 at 3–5.

Under the circumstances of this case, the court finds that the course of treatment undertaken by the defendants did not violate Madison's constitutional rights. Specifically,

there is no evidence upon which the court could conclude that the defendants acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (internal quotation marks and citation omitted). Rather, the evidence before the court demonstrates that medical personnel evaluated Madison each time he reported to the health care unit for treatment, prescribed medication to him in accordance with their professional judgment, and ordered tests to aid in their assessment and treatment of his condition. Doc. 12-1 at 8–85. Whether Dr. Darbouze "should have [utilized] additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted). Additionally, neither negligence in diagnosis or treatment nor medical malpractice constitute deliberate indifference actionable in a § 1983 case. *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771. Furthermore, an inmate's desire for some other form of medical treatment does not constitute deliberate indifference. *Hamm*, 774 F.2d at 1505; *Franklin*, 662 F.2d at 1344 (holding that simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

Madison's self-serving assertion of deliberate indifference does not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding hat where a party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment"). Moreover, Madison has failed to present any evidence showing the defendants knew that the manner in which they provided treatment created a substantial risk to his health and with this knowledge consciously disregarded the risk. The record is therefore devoid of evidence—significantly probative or otherwise—showing that the defendants acted with deliberate indifference to Madison's medical needs. Thus, summary judgment is due to be granted in favor of the defendants on this claim.

**B.      Assessment of Co-Payment**

Madison alleges that his constitutional rights were violated by the assessment of a co-payment for partial payment of the costs attendant to medical services provided to him on May 25, 2016 when he presented to the health care unit complaining of nausea and vomiting. Doc. 1 at 3. In support of this assertion, Madison argues that he should have been exempted from the co-payment because this treatment constituted emergency care for which no co-payment is required. *See* Adm. Reg. No. 703 § V, ¶ A(4).

It is undisputed that the Alabama Department of Corrections adopted the medical co-payment policy set forth in Administrative Regulation No. 703, which is hosted on the ADOC website at www.doc.state.al.us/Regulations. Under this regulation and as reflected in Madison's exhibit to his response, the requisite medical co-payment is charged to the inmate and collected by correctional officials. Adm. Reg No. 703, § 1 & Doc. 17 at 4. However, "all inmates [must] have access to healthcare regardless of their ability to pay. No inmate shall be denied care because of a record of non-payment or current inability to pay for health services." Adm. Reg. No. 703 § II, ¶ A.

The law directs that a defendant in a § 1983 action cannot be held liable on the basis of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that defendants "are not liable under § 1983 for the unconstitutional acts of [other officials] on the basis of . . . vicarious liability"); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding that government officials cannot be held liable on the basis of vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Consequently, liability for the collection of a co-payment by correctional officials for medical treatment provided to an inmate cannot attach to the medical personnel named as defendants in this case.

In addition, charging a co-payment for medical treatment provided to an inmate, standing alone, does not violate the Constitution. The simple fact that Madison is charged a nominal fee or co-payment for medical treatment does not in any way deprive him of a protected right, privilege, or immunity. *Shapley v. Nev. Bd. of St. Prison Comms.*, 766 F.2d 404, 408 (9th Cir. 1985) (holding that imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); *Jones v. Corizon*, 2015 WL 5013954, at *17 (M.D. Ala. 2015) (finding that charging a co-payment for treatment provided each time an inmate seeks/receives treatment from prison medical personnel is not violative of the Constitution); *Bester v. Wilson*, 2000 WL 1367984, at *8 (S.D. Ala.

August 18, 2000) (finding that "the charging of a fee to prisoners for medical treatment from their [available] funds has been held to be constitutional when challenged on several due process and Eighth Amendment grounds"). The record is devoid of evidence indicating that Madison was denied medical treatment due to his inability to pay the fee; instead, the evidentiary materials establish that Madison received medical treatment regardless of whether he had the ability to provide a co-payment. Since Madison has failed to allege a violation of his constitutional rights with respect to the collection of a fee associated with medical treatment, the defendants are entitled to summary judgment on this claim.

C.     **Violation of Administrative Regulation**

To the extent Madison seeks relief for an alleged violation of Administrative Regulation No. 703, he is likewise entitled to no relief as infringements of agency rules, regulations, or procedures do not—without more—amount to constitutional violations. *See Sandin v. Conner,* 515 U.S. 472, 484–86 (1995); *Magluta v. Samples,* 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (holding that mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (finding that claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (same); *see also Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1459 (4th Cir. 1990) (holding that if state law

grants more procedural rights than the Constitution requires, a state's failure to abide by its law is not a federal violation). For these reasons, the defendants are likewise entitled to summary judgment on Madison's claim alleging a violation of internal administrative regulations.

## IV. CONCLUSION

Accordingly, it is ORDERED that:

1. The defendants' motion for summary judgment is GRANTED.

2. Judgment is GRANTED in favor of the defendants.

3. This case is DISMISSED with prejudice.

4. Costs are taxed against the plaintiff.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 19th day of February, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE